THOMAS H. PRIVETTE v. UNIVERSITY OF NORTH CAROLINA AT CHAPEL
HILL, DAVID S. JANOWSKI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, AND
AMIR S. RESVANI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

No. 8815SC1217

(Filed 7 November 1989)

### 1. Rules of Civil Procedure § 12 (NCI3d) — motion to dismiss — no conversion to summary judgment motion

The trial court was not required to convert defendants' Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56 where the trial court did not consider matters outside the pleadings but considered only the amended complaint, memoranda submitted on behalf of the parties and arguments of counsel.

**Am Jur 2d, Summary Judgment § 13.**

### 2. Master and Servant § 10.2 (NCI3d) — breach of employment contract — insufficiency of complaint

Plaintiff's allegation that he was discharged without just cause was insufficient to state a claim against UNC-CH for breach of an employment contract where plaintiff failed to allege that his employment was for a definite period. Plaintiff's contention that the UNC-CH Personnel Guide applies to his dismissal was without merit where plaintiff failed to allege that his employment contract expressly included the Personnel Guide and failed to include in his complaint the relevant terms of the Personnel Guide or attach the Personnel Guide to the complaint as an exhibit.

**Am Jur 2d, Master and Servant §§ 27, 45, 46.**

### 3. Master and Servant § 10.2 (NCI3d) — wrongful discharge — insufficiency of complaint

Plaintiff's allegation that UNC-CH discharged him because he associated with an out-of-favor member of the UNC-CH research faculty failed to state a claim for wrongful discharge of an employee at will.

**Am Jur 2d, Master and Servant § 54.**

**4. Master and Servant § 13 (NCI3d) — tortious interference with employment contract — insufficiency of complaint**

Plaintiff's complaint was insufficient to state a claim against the individual defendants for tortious interference with plaintiff's contract of employment as a research technician for the lab at the UNC-CH Center for Alcoholic Studies where it alleged that one defendant was the director of the Center and the second defendant was the assistant director of the Center's lab, since the complaint showed on its face that both defendants had a legitimate professional interest in plaintiff's performance of his duties and therefore had a proper motive for their actions.

**Am Jur 2d, Master and Servant §§ 45, 46.**

**5. Constitutional Law § 17 (NCI3d) — freedom of expressive association — insufficiency of complaint to allege violation**

Plaintiff's allegation that defendants, acting under color of State law, harassed and terminated plaintiff as a research technician for the lab at the UNC-CH Center for Alcoholic Studies because of plaintiff's association with an out-of-favor member of the research faculty was insufficient to state a claim under 42 U.S.C. § 1983 for a violation of his right to freedom of expressive association.

**Am Jur 2d, Constitutional Law §§ 533 et seq.**

**6. Master and Servant § 10 (NCI3d) — at-will employee — no right to hearing before discharge**

An at-will employee had no property interest in continued employment cognizable under the due process clause and thus was not entitled to a hearing before being discharged.

**Am Jur 2d, Constitutional Law §§ 839, 845; Master and Servant § 27.**

**7. Constitutional Law § 17 (NCI3d) — employee dismissal — interference with admission to medical school — no protected property interest**

Plaintiff's allegation that his dismissal as a research technician at the UNC-CH Center for Alcoholic Studies affected his "right to seek and be considered for admission into the University's Medical School" failed to state a claim under 42

PRIVETTE v. UNIVERSITY OF NORTH CAROLINA

[96 N.C. App. 124 (1989)]

U.S.C. § 1983 based on a property interest protected by procedural due process.

**Am Jur 2d, Constitutional Law §§ 813-815.**

8. **Constitutional Law § 17 (NCI3d) — employee dismissal — injury to reputation — inadequacy of grievance procedure — insufficient allegations**

Assuming that plaintiff sufficiently alleged that defendants dismissed him as a research technician at UNC-CH on the basis of an unsupported charge which could wrongfully injure plaintiff's reputation so that he was entitled to a hearing after his dismissal, plaintiff's complaint was insufficient to state a claim under 42 U.S.C. § 1983 for a violation of his procedural due process rights where it contained a conclusory allegation that the UNC Grievance Procedure was inadequate to provide sufficient redress for him but failed to allege the provisions of the Grievance Procedure.

**Am Jur 2d, Pleading § 69.**

9. **Conspiracy § 2 (NCI3d) — civil conspiracy — insufficiency of complaint**

Plaintiff's complaint was insufficient to state a claim for civil conspiracy arising out of his discharge from employment by defendants where it failed to allege any unlawful act by defendants or any lawful act done in an unlawful way.

**Am Jur 2d, Conspiracy §§ 49 et seq.**

10. **Damages § 12.1 (NCI3d) — punitive damages — dismissal where underlying claims dismissed**

Plaintiff's claim for punitive damages was properly dismissed where the underlying claims were not enforceable as stated.

**Am Jur 2d, Damages § 741.**

APPEAL by plaintiff from *Farmer (Robert L.), Judge.* Judgment entered 6 August 1988 in Superior Court, ORANGE County. Heard in the Court of Appeals 11 May 1989.

PRIVETTE v. UNIVERSITY OF NORTH CAROLINA

[96 N.C. App. 124 (1989)]

*Faison & Brown, by Charles Gordon Brown and John C. Schafer, for plaintiff-appellant.*

*Lacy H. Thornburg, Attorney General, by Edwin M. Speas, Jr., Special Deputy Attorney General, for the State.*

GREENE, Judge.

Plaintiff (hereafter "Privette" or "plaintiff") appeals the dismissal of his complaint in which he asserted multiple claims allegedly arising out of his discharge from employment by defendants. Defendants are the University of North Carolina at Chapel Hill (UNC), Dr. David S. Janowski [sic] ("Janowsky"), individually and officially, and Dr. Amir S. Resvani ("Resvani"), individually and officially.

The facts, as alleged in the complaint, reveal that Privette in January 1986 was employed as "research technician for the Lab at the University's Center for Alcoholic Studies. His duties involved performing scientific experiments under the direction of Dr. R. D. Myers" (hereafter "Myers"). While Privette "reported directly to Dr. Myers concerning the scientific aspect of his work," other research in the Lab was supervised by Resvani who also "had responsibility for some administrative aspects of the Lab." In early 1987, the defendants "began a pattern of harrassment [sic] against Privette because of his association with Dr. Myers." The "Defendants encouraged the research technicians under Rezvani's [sic] supervision to make false accusations against Dr. Myers and, because of Privette's association with Dr. Myers, also against Privette."

The complaint further alleges that:

In retaliation for Privette's continued association with Dr. Myers and his initiation of the grievance procedure concerning the Defendants' harassment, the Defendants conspired to terminate Privette's employment with the University, prevent him from obtaining employment with the University in another capacity, prevent him from gaining admission into the University Medical School, and prevent him from seeking legal redress for the Defendants' violation of his rights.

On 19 June 1987, Janowsky told Privette that because he had failed to properly clean a "surgery table" he "would be terminated." Plaintiff alleged that the "Defendants conspired to make Privette's work area appear to be in much worse condition than the other work areas so that the Defendants would have an excuse for

terminating Privette." "Janowsky told Privette that Janowsky would keep his own file on Privette and that he would use it against Privette if he had the opportunity, and that Janowsky would do whatever he could do to keep Privette out of the University's Medical School." On 23 June 1987, "Janowsky informed Privette that he was terminated effective June 19." "During the summer of 1987, Privette inquired about numerous jobs at the University. Although many persons expressed interest in employing Privette, in each case his application was eventually rejected. Upon information and belief, the applications were turned down after the employers had consulted with the individual Defendants or other University officials." "Upon information and belief, and as a part of a continuing effort to harass Privette, the Defendants have made defamatory statements about Privette to potential employers and told them not to employ Privette as part of a continuing effort to harass Privette."

Based on the facts alleged in the complaint, Privette made the following separate claims for relief:

Count I—Conspiracy

45. Each of the allegations set forth in paragraphs 1 through 44 is realleged herein.

46. The unlawful conduct and practices described herein were acts committed pursuant to a common scheme, enterprise, or agreement among the Defendants and others, the object of which was to commit unlawful acts or to use lawful acts to achieve unlawful results harmful to Privette.

47. Each of the Defendants and others were co-conspirators, and as co-conspirators each was the agent of the others in the perpetuation of unlawful conduct or practices which proximately caused injuries to Privette.

Count II—Deprivation of Civil Rights

(42 U.S.C. Section 1983)

48. Each of the allegations set forth in paragraphs 1 through 47 is realleged herein.

49. At all times relevant to this lawsuit Privette has had substantial liberty and property interest in his continued employment as a research technician at the lab, the right to seek and

PRIVETTE v. UNIVERSITY OF NORTH CAROLINA

[96 N.C. App. 124 (1989)]

be considered for other employment at the University and elsewhere, the right to seek and be considered for admission into the University's Medical School, the right to seek legal redress through the University's Grievance Procedure and other legal remedies, the freedom of association, and the freedom of expression.

50. At all times relevant to this lawsuit, the Defendants have acted under color of state law.

51. The Defendants acted arbitrarily and capriciously in harassing and terminating Privette. The Defendants have also violated Privette's rights to seek legal redress and his rights to freedom of association and freedom of expression.

52. Janowski [sic] and Rezvani [sic] have acted in bad faith and with ill will and malice towards Privette in violating his rights.

53. Privette has incurred substantial injuries as a result of the Defendants' violation of his rights.

Count III—Interference with Contractual Relations

54. Each of the allegations set forth in paragraphs 1 through 53 is realleged herein.

55. Between January of 1986 and June of 1987 Privette had a valid contract of employment with the University which conferred rights and privileges upon Privette.

56. Janowski [sic] and Rezvani [sic] had knowledge of the contract between Privette and the University.

57. Janowski [sic] and Rezvani [sic] intentionally induced the University to terminate Privette in violation of his contract of employment.

58. Janowski [sic] and Rezvani [sic] lacked any justification for their acts.

59. The acts of Janowski [sic] and Rezvani [sic] have proximately caused Privette to incur substantial damages.

Count IV—Intentional Infliction of Emotional Distress

60. Each of the allegations set forth in paragraphs 1 through 59 is realleged herein.

61. The acts of the Defendants amount to extreme and outrageous conduct.

62. The Defendants acted with the intent to cause Plaintiff to suffer severe emotional distress, or with reckless indifference as to the likelihood that Privette would suffer severe emotional distress.

63. The Defendants' acts have caused Privette to suffer severe emotional distress.

64. The Defendants' acts have proximately caused Privette to suffer substantial damages.

Count V — Wrongful Discharge

65. Each of the allegations set forth in paragraphs 1 through 64 is realleged herein.

66. Pursuant to the University's Personnel Guide, Privette could be discharged only for just cause.

67. At all times that Privette was employed by the University, he served the University faithfully and diligently, conducted himself properly, and performed all the duties incident to his employment honestly and with reasonable diligence, care and attention.

68. The Defendants discharged Privette without just cause.

69. The Defendants' wrongful discharge of Privette was the proximate cause of damages incurred by Privette.

Count VI — Breach of Contract

70. Each of the allegations set forth in paragraphs 1 through 69 is realleged herein.

71. Between January of 1986 and June of 1987, Privette had a valid and enforceable contract of employment with the University.

72. The Defendants breached Privette's contract of employment with the University.

73. The Defendants' breach of Privette's employment contract was the proximate cause of damages incurred by Privette.

### Count VII—Punitive Damages

74. Each of the allegations set forth in paragraphs 1 through 73 is realleged herein.

75. The aforesaid actions were done intentionally, willfully, wantonly, or with a heedless and reckless disregard of Privette's rights, entitling Privette to recover punitive damages in an amount sufficient to punish the Defendants and deter similar conduct in the future.

In his prayer for relief, the plaintiff requested back pay, punitive damages and injunctive relief to enjoin the defendants from interfering with "any application by the Plaintiff for employment with any person or entity, including the University because of Plaintiff's exercise of his civil rights." The plaintiff also requested injunctive relief to prohibit the defendants from interfering with or adversely affecting "any application by the Plaintiff for admission to any school or program of the University, or any other college or university. . ." Finally, the plaintiff requested that "the University's personnel file be purged of any notes or documents which relate in any way to the Defendants' wrongful conduct or the Plaintiff's exercise of his civil rights. . ."

The plaintiff later moved to amend his complaint to add:

53A The University's Grievance Procedure would not provide adequate redress for Privette's claims and requested remedies, and would not provide an orderly procedure for an appeal to the Superior Court for review of the final administrative action. Thus, Privette has no adequate remedy under state law which provides due process.

On 18 July 1988, the trial court allowed the plaintiff's motion to amend his complaint and "[u]pon consideration of the amended complaint, memoranda submitted on behalf of the parties, and arguments of counsel," granted defendants' Rule 12(b)(6) Motion to Dismiss. In the alternative, after considering affidavits "attached to defendants' motion for partial summary judgment, the amended complaint, the memoranda submitted on behalf of the parties, and the arguments of counsel," the trial court granted summary judgment for the defendants as to Count II, Count III, Count V, and Count VI of the amended complaint.

The issues presented are whether the trial court properly dismissed I) the breach of contract claim; II) the wrongful discharge claim; III) the interference with contractual relations claim; IV) the intentional infliction of emotional distress; V) the deprivation of civil rights claim; VI) the conspiracy claim; and VII) the punitive damages claim, pursuant to Rule 12.

[1] We first determine the trial court was not required to convert the Rule 12 motion into one for summary judgment under Rule 56. N.C.G.S. § 1A-1, Rule 12(b)(6) (1983); N.C.G.S. § 1A-1, Rule 56 (1983). N.C.G.S. § 1A-12(b) (if "matters outside the pleading" are presented to the court, Rule 12 motions are converted to Rule 56 motions). While matters outside the pleadings were introduced, the record is clear the trial court did not consider these affidavits in ruling on the Rule 12 motion. The trial court specifically stated in its order that for the purposes of the Rule 12 motion, it considered only the amended complaint, memoranda submitted on behalf of the parties and arguments of counsel. "Memoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleading for purposes" of converting a Rule 12 motion into a Rule 56 motion. 5 C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1366 at 682 (1969). The record does not contain a copy of the memoranda submitted by the attorneys to the trial court and we are unable to determine if the memoranda contained any factual matters not contained in the pleadings. However, the plaintiff does not contest the issue and we therefore accept the memoranda as legal memoranda, not including factual matters outside the pleadings.

In reviewing the Rule 12 dismissal, we accept all the well-pleaded facts, not conclusions of law, as true. *Jackson v. Bumgardner*, 318 N.C. 172, 174-75, 347 S.E.2d 743, 745 (1986); *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (unwarranted deductions of facts are not admitted). "[W]hen the complaint on its face reveals the absence of fact sufficient to make a good claim," dismissal of the complaint under Rule 12 is proper. *Jackson*, 318 N.C. at 175, 347 S.E.2d at 745.

I

Breach of Contract

[2] The complaint alleges an employment contract existed between defendant UNC and plaintiff, and plaintiff did not state a claim for

PRIVETTE v. UNIVERSITY OF NORTH CAROLINA

[96 N.C. App. 124 (1989)]

breach of contract against defendants Janowsky and Resvani, either in their individual or official capacities. *Smith v. State*, 289 N.C. 303, 332, 222 S.E.2d 412, 431 (1976) (in breach of contract claim, only principal, not agents, are liable for breach). Furthermore, we determine that as the plaintiff's alleged contract with UNC was terminable at will, Privette has failed to allege a breach of contract claim against UNC.

"[W]hen a contract of employment does not fix a definite term the employment is terminable without cause at the will of either party." *Sides v. Duke University*, 74 N.C. App. 331, 336, 328 S.E.2d 818, 823, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). The fact that Privette alleged that he was discharged "without just cause" is immaterial as he did not allege that his employment was for a definite period. *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). Privette alleges no more than a unilateral expectation of continued employment.

Privette argues that regardless of his failure to allege a "definite term" of employment, that UNC's Personnel Guide applies to his dismissal. Firstly, Privette failed to allege that his employment contract expressly included UNC's Personnel Guide. *Rosby v. Gen'l Baptist State Convention*, 91 N.C. App. 77, 81, 370 S.E.2d 605, 608, *disc. rev. denied*, 323 N.C. 626, 374 S.E.2d 590 (1988) (employment manual not part of employment contract unless expressly included). Secondly, plaintiff did not include in his complaint the relevant terms of the personnel guide or attach the personnel guide to the complaint as an exhibit.

Accordingly, as the complaint 'reveals the absence of fact sufficient to make a good claim,' we affirm the trial court's dismissal of Privette's breach of contract action against all defendants.

## II

### Wrongful Discharge

[3] As a general rule, an employee-at-will has no claim for relief for wrongful discharge. *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 262, 335 S.E.2d 79, 85, *disc. rev. denied*, 315 N.C. 597, 341 S.E.2d 39 (1986). However, the doctrine is not without limits and a valid claim for relief exists for wrongful discharge of an employee-at-will if the contract is terminated "for an unlawful reason or purpose that contravenes public policy." *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826.

Privette alleged that UNC discharged him because he associated with Myers, an allegedly out-of-favor member of the UNC research faculty. We determine that this allegation, while possibly asserting an arbitrary reason for discharge, does not assert an unlawful reason. *Id.* (employee-at-will's employment can be terminated for "arbitrary or irrational reason"); *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 382 S.E.2d 836, 840 (1989) (employee-at-will's employment can be terminated for "indifferent and illogical" reasons). Furthermore, the plaintiff does not allege that the discharge contravenes any public policy.

Accordingly, as the complaint 'reveals the absence of fact sufficient to make a good claim,' we affirm the trial court's dismissal of plaintiff's claim for relief against all defendants for wrongful discharge.

## III

## Interference with Contractual Relations

[4]   The elements of a tortious interference with employee contract claim are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The interference is "without justification" if the defendants' motives for procuring termination of the employment contract were "not reasonably related to the protection of a legitimate business interest" of the defendant. *Smith v. Ford Motor Co.*, 289 N.C. 71, 94, 221 S.E.2d 282, 292 (1976); *Sides*, 74 N.C. App. at 347, 328 S.E.2d at 829. This claim for relief also exists on behalf of employees at will. *Smith*, 289 N.C. at 85, 221 S.E.2d at 291.

The complaint alleged that Janowsky was the director of the University's "Center for Alcohol Studies" and that Resvani was the assistant director of the Center's "Lab." These allegations show that both Janowsky and Resvani had an interest in insuring proper work procedures at the Center and, as such, had a legitimate professional interest in the plaintiff's performance of his duties. Therefore, Privette's complaint on its face admits that Janowsky and Resvani had a proper motive for their actions. *See Sides*,

74 N.C. App. at 346, 328 S.E.2d at 829 (complaint must admit of no other motive for interference other than malice).

Accordingly, Privette's complaint 'reveals the absence of fact sufficient to make a good claim' for interference with employment contract and the trial court was correct in dismissing this claim.

## IV

### Intentional Infliction of Emotional Distress

Privette assigned as error dismissal of this claim for relief, but has failed to cite authority in his brief in support of the assignment. We deem it abandoned. North Carolina Rules of App. Procedure, Rule 28(b)(5); *State v. Sanders*, 95 N.C. App. 56, 381 S.E.2d 827, 832 (1989).

## V

### Deprivation of Civil Rights

Plaintiff next alleged that the defendants, in their individual and official capacities, violated Privette's civil rights and sought relief under 42 U.S.C. § 1983 (1979). § 1983, a federal statute, "creates no substantive rights; it only provides for access to the courts to vindicate those rights already guaranteed by the Constitution or other federal statutes." *Harwood v. Johnson*, 92 N.C. App. 306, 311, 374 S.E.2d 401, 405 (1988). State courts, along with the federal courts, "exercise concurrent subject matter jurisdiction over claims arising under [§] 1983." *Id.*

### A.   Substantive Due Process

A plaintiff states a cause of action under § 1983 when he alleges that his conduct was protected by the constitution and that the constitutionally-protected conduct was a "motivating factor" in his discharge. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 50 L.Ed.2d 471, 484 (1977). An employment discharge violates substantive due process rights if it is based upon constitutionally impermissible grounds, regardless of whether the employee had a property interest in continued employment. *Perry v. Sindermann*, 408 U.S. 593, 597, 33 L.Ed.2d 570, 577 (1972).

[5]   Plaintiff first alleged that his association with Myers led to defendants' harassment of Privette. Privette argues that any harassment from the defendants as a result of his relationship with Myers is a violation of his "freedom of association" and gives rise to

§ 1983 claim. We agree with the plaintiff that freedom of association can be a liberty interest entitled to "protection as a fundamental element of personal liberty." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 82 L.Ed.2d 462, 471 (1984). The United States Supreme Court has enunciated two types of association: the "freedom of intimate association" and the "freedom of expressive association." *Id.*

The 'freedom of intimate association' grows out of the bill of rights and protects "the formation and preservation of certain kinds of highly personal relationships . . . from unjustified interference by the State." *Id.* Determining the limits which can be made on a public employee "entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." *Id.*, 468 U.S. at 620, 82 L.Ed.2d at 473. The only association between Myers and Privette alleged in the complaint is an employment relationship. There is no allegation of any 'intimate' association or 'personal attachment.'

'Freedom of expressive association' includes:

[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances [that] could not be vigorously protected from interference by the State unless a correlative freedom to engage in *group effort* toward those ends were not also guaranteed. . . . According protection to *collective effort* on behalf of *shared goals* is especially important in preserving *political and cultural diversity* and in *shielding dissident expression* from suppression by the majority.

*Roberts*, 468 U.S. at 622, 82 L.Ed.2d at 474 (emphasis added) (citations omitted). Plaintiff's complaint includes no allegations that defendants' actions in any manner interfered with a 'collective effort' of Privette and Myers to assert 'shared goals.' The allegation that Privette was harassed for his association with Myers is insufficient to allege a 'freedom of expressive association.' The mere "accident of overlapping location at some point in space and time" is not sufficient "to invoke the preferred freedom of association." Tribe, Laurence H., *American Constitutional Law*, 2d Ed. (1988) §§ 15-17.

Accordingly, the complaint 'reveals the absence of fact sufficient to make a good claim;' we determine the trial court did not err in dismissing plaintiff's claims for violations of substantive due process based on 'freedom of association.'

## B.  Procedural Due Process

The plaintiff is denied procedural due process "only to the degree that plaintiff's complaint reveals a colorable claim that a 'property' or 'liberty' interest was violated by the procedures attendant to plaintiff's discharge." *Presnell v. Pell*, 298 N.C. 715, 723, 260 S.E.2d 611, 616 (1979).

1

**[6]** Plaintiff first claimed a property interest "in continued employment" and that this interest was violated when he was denied a hearing before being discharged from his employment. We disagree. At-will employees have no property interests in their employment cognizable under the due process clause. *See Pittman v. Wilson County*, 839 F.2d 225, 229-30 (4th Cir. 1988). The necessity of a hearing *before* discharge arises only if plaintiff has a property interest in continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 33 L.Ed.2d 548, 556 (1972) (hereafter "*Roth*").

2

**[7]** Privette next alleged his "right to seek and be considered for admission into the University's Medical School" was a property interest and that the procedures attendant to his dismissal denied him of this interest. To have a property interest claim, a plaintiff "must have more than an abstract need or desire. . . . He must have more than a unilateral expectation. . . . He must, instead, have a legitimate claim of *entitlement*. . ." *Roth*, 408 U.S. at 577, 33 L.Ed.2d at 561 (emphasis added). Privette alleged only his desire to attend UNC medical school. He did not allege that he was qualified to attend medical school, that he had applied and was rejected by the medical school or that he was entitled to admission to any medical school. " 'The admission to a professional school is a privilege and not, standing · alone, a constitutional or property right. . . .' " *Phelps v. Washburn University*, 632 F.Supp. 455, 458 (D. Kan. 1986) (citation omitted). Privette's allegations are no more than speculation suggesting the defendants might interfere with his application were he to apply. These allegations do not rise to a property interest.

3

**[8]** Privette next alleged that the defendants interfered with his liberty interest in seeking future employment by threatening to disseminate false information.

Dismissal from employment does not itself offend the liberty interest one has to seek future employment. However, "dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee" does affect a constitutional liberty interest. *Arnett v. Kennedy*, 416 U.S. 134, 157, 40 L.Ed.2d 15, 35 (1974). In such an instance, the employee is to be accorded pursuant to the due process clause, "an opportunity to refute the charge before University officials." *Roth*, 408 U.S. at 573, 33 L.Ed.2d at 558. The purpose of the hearing in such a case is to provide the person " 'an opportunity to clear his name.' " *Arnett*, 416 U.S. at 157, 40 L.Ed.2d at 35 (citation omitted).

Assuming Privette has sufficiently alleged that the defendants dismissed him 'upon an unsupported charge which could wrongfully injure the reputation' of Privette and entitle him to a hearing after his dismissal, Privette also alleged that UNC's administrative hearing procedures were inadequate in that:

[UNC's] Grievance Procedure would not provide adequate redress for Privette's claims and requested remedies, and would not provide an orderly procedure for appeal to the Superior Court for review of the final administrative action. Thus, Privette has no adequate remedy under state law which provides due process.

These conclusory allegations are insufficient as a matter of law to "demonstrate the adequacy, or lack thereof, of legal administrative remedies." *Lloyd v. Babb*, 296 N.C. 416, 427, 251 S.E.2d 843, 851 (1979). "[W]hen an *effective* administrative remedy exists, that remedy is exclusive. . . . Our inquiry must therefore be, taking plaintiff['s] factual allegations as true, whether the [grievance] procedure is an effective administrative remedy for the wrongs of which [he] complain[s]." *Id.* 296 N.C. at 428, 251 S.E.2d at 852. However, the failure of the complaint to allege the provisions of UNC's Grievance Procedure renders impossible our determination of the adequacy in fact of the hearing procedures provided to Privette. In order for Privette to avoid dismissal under Rule 12, the complaint must allege facts sufficient to satisfy the substantive elements of the claim; plaintiff's conclusory pleadings are insufficient. *Jackson*, 318 N.C. at 175, 347 S.E.2d at 745 (conclusions of law are not accepted as true when considering Rule 12 motion to dismiss). Accordingly, the complaint 'reveals the absence of fact sufficient to make a good claim' for violation of his procedural

**PRIVETTE v. UNIVERSITY OF NORTH CAROLINA**

[96 N.C. App. 124 (1989)]

due process rights and the trial court did not err in dismissing this claim.

## VI

## Conspiracy

[9] The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme. *Jones v. City of Greensboro*, 51 N.C. App. 571, 583, 277 S.E.2d 562, 571 (1981) (citations omitted).

As we have determined that plaintiff has not successfully alleged the doing of any 'unlawful' act and does not argue that defendants' acts were lawful, but done in an 'unlawful way,' plaintiff's conspiracy claim fails. The complaint 'reveals the absence of fact sufficient to make a good claim,' and the trial court properly dismissed this claim.

## VII

## Punitive Damages

[10] Punitive damages can be recovered "only for tortuous [sic] conduct and then only on proof that the defendant acted to cause plaintiff's injury wilfully, with malice, or with a reckless disregard for plaintiff's rights." *Sides*, 74 N.C. App. at 348, 328 S.E.2d at 830. We have determined that plaintiff's claims for the underlying causes of actions are not enforceable claims as alleged and plaintiff's plea for the award of punitive damages likewise was properly dismissed.

## VIII

Having determined that the trial court committed no error in dismissing Privette's complaint under Rule 12, we find it unnecessary to address any of the alternate bases for the trial court's dismissal.

Affirmed.

Judges JOHNSON and COZORT concur.