LendingTree, LLC v. Intercontinental Capital Grp., Inc., 2017 NCBC 53.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 20746

LENDINGTREE, LLC,

          Plaintiff,

v.

INTERCONTINENTAL CAPITAL
GROUP, INC.; EQUALIFY
HOLDINGS LIMITED LIABILITY
COMPANY; DANIEL WILSON; and
LAURA ASHLEY BROOKS,

          Defendants.

**ORDER AND OPINION ON MOTION
TO DISMISS CERTAIN CLAIMS OF
THE AMENDED COMPLAINT**

1.     This case concerns a contract dispute between Plaintiff LendingTree, LLC ("LendingTree") and Defendant Intercontinental Capital Group, Inc. ("Intercontinental"). LendingTree contends that Intercontinental has violated a non-solicitation provision of the contract either by directly hiring a number of LendingTree's employees or by indirectly hiring them through its alter ego, Defendant eQualify Holdings Limited Liability Company ("eQualify Holdings"). In this action, LendingTree asserts claims against Intercontinental and eQualify Holdings, as well as two of the individuals (Daniel Wilson and Laura Ashley Brooks) allegedly targeted and hired.

2.     Defendants jointly moved to dismiss some but not all of the asserted claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Having considered the motion, the briefs, and the arguments of counsel, the Court **GRANTS in part** and **DENIES in part** the motion.

*Nexsen Pruett, PLLC, by C. Grainger Pierce, Jr. and Kathleen D.B. Burchette, for Plaintiff LendingTree, LLC.*

*Bradley Arant Boult Cummings LLP, by Christopher C. Lam and G. Benjamin Milam, for Defendants Intercontinental Capital Group, Inc., eQualify Holdings Limited Liability Company, Daniel Wilson, and Laura Ashley Brooks.*

Conrad, Judge.

## I.
## BACKGROUND

3.     The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss.  The following factual summary is drawn from relevant allegations in the amended complaint.

4.     LendingTree, a Delaware limited liability company, is "an online loan marketplace."  (Am. Compl. ¶¶ 1, 7.)  Among other things, LendingTree provides a "proprietary consumer-lender matching process," which allows consumers to compare information from prospective lenders.  (Am. Compl. ¶ 7.)  LendingTree maintains its principal place of business in Mecklenburg County, North Carolina.  (Am. Compl. ¶ 1.)

5.     Intercontinental, a New York corporation, is one of the lenders in LendingTree's network.  (Am. Compl. ¶¶ 2, 10.)  Intercontinental does business in approximately forty States under the trade name "eQualify" and shares "common ownership with" eQualify Holdings. (Am. Compl. ¶¶ 2, 19, 25, 29.)  LendingTree alleges that eQualify Holdings "may be an inactive entity" and "is a close affiliate and alter ego" of Intercontinental.  (Am. Compl. ¶ 3.)

6.     The relationship between LendingTree and Intercontinental is governed by the terms of a contract entitled "CLO Services Agreement" ("Agreement"), which became effective on January 29, 2016 and has not been terminated. (*See* Am. Compl. ¶ 10.) The Agreement includes a non-solicitation provision, which states as follows: "Unless otherwise approved in writing, during the [term of the Agreement] and for one (1) year thereafter, [Intercontinental] shall not hire any person who is or was an employee of LendingTree during the [term of the Agreement]." (Am. Compl. ¶ 11.)

7.     According to the amended complaint, Intercontinental began recruiting and hiring LendingTree's employees as early as 2014 and continued to do so through 2016, after the effective date of the Agreement. (*See* Am. Compl. ¶¶ 17–19.) Intercontinental's alleged targets included both individual Defendants, Daniel Wilson and Laura Ashley Brooks. (Am. Compl. ¶¶ 4, 5.) Wilson is LendingTree's former Chief Architect of Technology. (Am. Compl. ¶ 12.) He resigned in May 2014 and, at an unspecified time "[t]hereafter," "began actively recruiting LendingTree employees to leave LendingTree and to provide services for" Intercontinental. (Am. Compl. ¶ 17.) Wilson allegedly induced Brooks to resign her position as LendingTree's Senior Director of Product Management on July 29, 2016. (*See* Am. Compl. ¶¶ 13, 17–18.)

8.     Roughly two months after Brooks's departure, Anthony Robinson and Edgar Melendez resigned their positions with LendingTree (as Senior Developer and Developer, respectively), allegedly due to the influence of Wilson and Brooks acting on behalf of Intercontinental. (*See* Am. Compl. ¶¶ 6, 14–15, 19.) LendingTree learned

that Robinson and Melendez intended "to work with Defendants Wilson and Brooks at an entity they each identified as 'eQualify.'" (Am. Compl. ¶ 19.) Melendez further informed LendingTree that he and the other former employees "would be helping 'eQualify' to build a direct-to-consumer back-end loan origination system" to compete with LendingTree. (Am. Compl. ¶ 20.)

9. These revelations prompted LendingTree to send Intercontinental a notice, which identified the four former employees by name and highlighted the non-solicitation provision of the Agreement. (*See* Am. Compl. ¶ 23.) On October 6, 2016, Intercontinental's President and General Counsel, Ron Fountain, responded that none of the individuals were employed by Intercontinental. (Am. Compl. ¶ 24.) On October 18, 2016, Fountain informed LendingTree that all four individuals were employed by eQualify Holdings. (Am. Compl. ¶ 25.)

10. LendingTree filed this action less than a month later on November 11, 2016. It contends that Intercontinental breached the Agreement, either by directly hiring Brooks, Robinson, and Melendez or by using eQualify Holdings as its alter ego to hire these individuals "in an attempt to circumvent the prohibitions on hiring LendingTree employees." (Am. Compl. ¶ 35; *see also* Am. Compl. ¶ 22.) Intercontinental and eQualify Holdings moved to dismiss the original complaint on December 16, 2016, and Wilson and Brooks did so on December 28, 2016. LendingTree filed its amended complaint as of right on March 1, 2017, and the Court denied the Defendants' initial motions to dismiss as moot on March 3, 2017.

11. The amended complaint asserts claims for breach of contract (against Intercontinental and eQualify Holdings), tortious interference with contract (against Wilson and Brooks), unfair or deceptive trade practices (against Intercontinental); and civil conspiracy (against all Defendants). The amended complaint also includes sections, styled as causes of action, regarding piercing the corporate veil and a request for a preliminary injunction. (*See* Am. Compl. ¶¶ 28–37, 58–61.)

12. Defendants jointly filed their renewed motion to dismiss on March 31, 2017. The motion seeks dismissal of all claims except for breach of contract and piercing the corporate veil. LendingTree filed its response on May 3, 2017, and Defendants filed a reply on May 16, 2017. The Court held a hearing on May 31, 2017, at which all parties were represented by counsel. The motion to dismiss is ripe for decision.

II.
ANALYSIS

13. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

14. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in

the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

A. Claim for Unfair or Deceptive Trade Practices Against Intercontinental

15. The amended complaint asserts a claim for unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 against only Intercontinental. (*See* Am. Compl. ¶¶ 49–53.) Intercontinental moves to dismiss the claim, arguing in part that "LendingTree has not alleged aggravating circumstances showing that this matter extends beyond a mere contractual dispute." (Defs.' Mem. in Supp. of Mot. to Dismiss ["Defs.' Mem."] 8.)

16. A claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1 requires three elements: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 743, 575 S.E.2d 40, 44 (2003). "[A] trade practice is unfair if it 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992) (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)).

17. In general, "actions for unfair or deceptive trade practices are distinct from actions for breach of contract," and "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust*, 107 N.C. App. at 62, 418 S.E.2d at 700. Accordingly, a plaintiff alleging breach of contract "must show 'substantial aggravating circumstances attending the breach to recover'" under section 75-1.1. *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (quoting *Branch Banking & Trust*, 107 N.C. App. at 62, 418 S.E.2d at 700). Aggravating circumstances "'generally involve forged documents, lies, and fraudulent inducements.'" *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *14 (N.C. Super. Ct. Jan. 5, 2016) (quoting *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013)).

18. The Court concludes that LendingTree has sufficiently alleged aggravating circumstances above and beyond a mere breach of contract. LendingTree alleges that Intercontinental attempted to "circumvent" the Agreement's non-solicitation provision by directing its alter ego, eQualify Holdings, to hire Brooks, Robinson, and Melendez. (Am. Compl. ¶ 35; *see also* Am. Compl. ¶¶ 3, 17–19, 26, 32.) Then, in response to LendingTree's inquiries, Intercontinental insisted that the individuals were employed by eQualify Holdings and denied breaching the Agreement. (*See* Am. Compl. ¶¶ 24–25.) Though ostensibly employed by eQualify Holdings, the former LendingTree employees are now providing services to Intercontinental: they work together in New York (the home of Intercontinental, not eQualify Holdings) and are

building a system that will allow Intercontinental to compete with LendingTree. (*See* Am. Compl. ¶¶ 20–22, 35.)

19.  These allegations are not "indistinguishable from an assertion that [Intercontinental] intentionally breached" the Agreement, as Intercontinental contends. (*See* Defs.' Mem. 9.)  Taken as true, the amended complaint alleges a scheme by Intercontinental to enjoy both the benefit of its bargain and the benefit of its breach.  Such allegations, akin to concealment of a breach, are sufficient to survive a motion to dismiss.  *See Sparrow Sys. v. Private Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at *44 (N.C. Super. Ct. Dec. 24, 2014) (denying motion to dismiss due to defendant's "deceitful conduct in order to effectuate and conceal its breaches"); *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 465–66 (M.D.N.C. 2003) (denying summary judgment where defendant engaged in intentional deception for the purpose of "continu[ing] to reap the benefits of the Agreement").

20.  In its reply memorandum, Intercontinental also argues that its alleged actions were not "in or affecting commerce," as required by section 75-1.1. Intercontinental bases this argument on the "learned profession" exception, contending that LendingTree improperly relies on correspondence from Intercontinental's general counsel, Ron Fountain, to show deception. (Defs.' Reply in Supp. of Mot. to Dismiss ["Defs.' Reply"] 7 (citing *Moch v. A.M. Pappas & Assocs., LLC*, 794 S.E.2d 898, 904 (N.C. App. 2016)).)  The Court disagrees.

21.    First, LendingTree's claim turns on the actions of Intercontinental, not its attorney, in deceptively hiring former LendingTree employees through an alter ego. Thus, in contrast with *Moch*, LendingTree has sufficiently identified "specific acts" that "were undertaken by defendants alone and not by defendants' counsel" and that "could support a claim for unfair or deceptive trade practices." *Moch*, 794 S.E.2d at 904. Second, Fountain held himself out as both President and General Counsel. (*See* Am. Compl. ¶ 24.) Taking reasonable inferences in favor of LendingTree as the non-moving party, Fountain acted in his capacity as President, which is not subject to the learned profession exception. *See Reid v. Ayers*, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000) (discussing "two-part test," including requirement that "conduct in question must be a rendering of professional services").

22.    For these reasons, LendingTree has adequately stated a claim for unfair or deceptive trade practices against Intercontinental. The Court denies the motion to dismiss the claim.

B. Claim for Tortious Interference with Contract Against Wilson and Brooks

23.    LendingTree contends that the individual Defendants, Wilson and Brooks, as agents of Intercontinental, tortiously interfered with the Agreement by inducing Intercontinental to hire LendingTree employees in violation of the non-solicitation provision. (*See* Am. Compl. ¶¶ 42–46; *see also* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ["Pl.'s Mem."] 3.)    Wilson and Brooks argue that they are immune from liability for interfering with the contractual relations of their alleged employer. (*See* Defs.' Mem. 7.)

24.   "The pleading standards for a tortious interference with contract claim are strict." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *15 (N.C. Super. Ct. Feb. 8, 2017); *accord Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).   To state a claim for tortious interference, a plaintiff must allege:  "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damages to plaintiff."  *Privette v. Univ. of N.C. at Chapel Hill*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 190 (1989) (quoting *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)).  "A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged."  *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988).

25.   As alleged, any interference by Wilson and Brooks was privileged, and LendingTree's claim cannot survive.  The amended complaint expressly states that Wilson was acting as an "agent" for Intercontinental when he recruited Brooks.  (Am. Compl. ¶ 19.)  And Wilson and Brooks were both acting as Intercontinental's "agents" when they recruited Robinson and Melendez.  (Am. Compl. ¶ 17.)  In other words, the amended complaint begins from the premise that Wilson and Brooks were employed by Intercontinental—either directly or through its alter ego, eQualify Holdings— when they lured others away from LendingTree.  (*See* Am. Compl. ¶ 22.)

26. These allegations defeat LendingTree's claim because "[a] corporate entity can only act through its agents and employees." *Scherer v. Steel Creek Prop. Owners Ass'n*, No. 1:13-cv-00121-MR-DLH, 2016 U.S. Dist. LEXIS 42372, at *23 (W.D.N.C. Mar. 30, 2016). As one federal district court put it, "employees of the contracting organization cannot commit tortious interference unless they have in fact interfered with the contract and the interference has no relation whatever to that legitimate business interest which is the source of the defendant's non-outsider status." *Ennett v. Cumberland County Bd. of Educ.*, 698 F. Supp. 2d 557, 561 (E.D.N.C. 2010) (applying North Carolina law) (citation and quotation marks omitted). Accordingly, "agents or employees" are generally "immune from liability for inducing" their employer "to breach its contract, assuming their actions are in pursuit of [their employment] interests or duties." *Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964) (citation and quotation marks omitted); *see also Scherer*, 2016 U.S. Dist. LEXIS 42372, at *23 ("Ergo, an action for interference with contract cannot generally be maintained against an agent or employee ('non-outsider') of a corporate party to the contract at issue.").

27. In its response brief, LendingTree contends that this case law does not apply to Brooks because she wrongfully "induced" Intercontinental and eQualify Holdings to breach the Agreement by "offering her employment" at a time when she was not employed by either company. (Pl.'s Mem. 7.) Defendants correctly observe that the amended complaint includes no allegations to support this argument. (*See* Defs.' Reply 3 n.2.) The amended complaint alleges that Intercontinental, eQualify

Holdings, and Wilson (as their agent) induced Brooks to resign—not that Brooks induced their conduct. (*See* Am. Compl. ¶ 18.) Accordingly, LendingTree's claim against Brooks rests on her alleged actions to recruit Robinson and Melendez, and those actions are privileged.

28. LendingTree also argues that Wilson and Brooks forsook any immunity by acting with malice and in their own interests, as opposed to Intercontinental's interests. (*See* Pl.'s Mem. 8–9.) The amended complaint does not support this argument. LendingTree consistently alleges that Intercontinental acted "through" Wilson and Brooks for the purpose of hiring individuals to compete with LendingTree. (*E.g.*, Am. Compl. ¶¶ 17–22.) Furthering an employer's competitive goals is a legitimate business purpose. *See Privette*, 96 N.C. App. at 134, 385 S.E.2d at 191 (affirming dismissal where "complaint on its face admit[ted] . . . a proper motive"); *see also Hooks*, 322 N.C. at 221, 367 S.E.2d at 650 (holding that "interference may be justified when the plaintiff and the defendant are competitors").

29. Moreover, LendingTree's allegations of malice are boilerplate. Paragraphs 44 and 45 of the amended complaint allege that Wilson and Brooks acted "intentionally, maliciously, and purposefully" and that their actions were "wrongful and without justification." Such conclusory and "general allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 833 (2007); *see also Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *24 (N.C. Super. Ct. Apr. 30, 2012) (dismissing claim where plaintiff made only "general conclusions of malice and fail[ed] to allege that

Defendants acted for their own personal interest"); *Kerry Bodenhamer Farms*, 2017 NCBC LEXIS 27, at *17–18 (same).

30.    For these reasons, the Court grants the motion to dismiss the claim for tortious interference with contract. LendingTree had an opportunity to cure any defect in this claim when it filed the amended complaint in response to Wilson and Brooks's original motion to dismiss. Accordingly, the Court dismisses the claim with prejudice.

### C. Claim for Civil Conspiracy Against All Defendants

31.    All Defendants move to dismiss the claim for civil conspiracy. "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011).

32.    Defendants point to the well-settled rule that "there can be no conspiracy" between a corporation and its agents. *Chrysler Credit Corp. v. Rebhan*, 66 N.C. App. 255, 259, 311 S.E.2d 606, 609 (1984). As discussed, the amended complaint expressly alleges that Wilson and Brooks acted as "agents" of Intercontinental when recruiting LendingTree's employees. (Am. Compl. ¶¶ 17, 19.) The amended complaint also alleges that eQualify Holdings is Intercontinental's "alter ego." (Am. Compl. ¶¶ 3, 37.) These allegations, taken as true, require dismissal of the claim. *See, e.g.*, *Chrysler Credit*, 66 N.C. App. at 259, 311 S.E.2d at 609 (affirming Rule 12(b)(6)

dismissal of conspiracy claim where claim expressly alleged agency relationship); *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F.Supp.2d 677, 689 (W.D. Pa. 2013) (applying California law and dismissing conspiracy claim because "an alter ego cannot conspire with itself").

33. LendingTree's response brief offers no argument with respect to Wilson or eQualify Holdings. (*See generally* Pl.'s Mem. 11–13.) Instead, LendingTree repeats its argument that Brooks was not an agent or employee of Intercontinental at the time of her own resignation from LendingTree. (*See* Pl.'s Mem. 12–13.) But the amended complaint does not allege that Brooks *conspired* to resign—it alleges that she was *induced* to resign by Intercontinental and its agents. (Am. Compl. ¶ 18.)

34. Accordingly, the Court grants the motion to dismiss the claim for conspiracy, and the claim is dismissed with prejudice. Having reached this decision, the Court need not address Defendants' alternative argument that the conspiracy claim lacks an underlying tort. (*See* Defs.' Mem. 10.)

### D. Preliminary Injunction

35. The amended complaint purports to assert a cause of action for "Preliminary Injunction Against All Defendants." (Am. Compl. ¶¶ 58–61.) Defendants move to dismiss for failure to state a claim, and LendingTree responds that the issue is not yet "ripe" because LendingTree has not "moved for a preliminary injunction." (*See* Defs.' Mem. 11–13; Pl.'s Mem. 13.)

36. Both sides are, in a sense, correct. "A preliminary injunction is an ancillary remedy, not an independent cause of action." *Revelle v. Chamblee*, 168 N.C. App. 227, 230, 606 S.E.2d 712, 714 (2005). Thus, Defendants correctly contend that a purported

cause of action for a preliminary injunction fails to state a claim. *See Sloan v. Inolife Techs., Inc.*, 2017 NCBC LEXIS 45, at *11–12 (N.C. Super. Ct. May 22, 2017) (dismissing purported "claim for damages").

37. Nevertheless, LendingTree has stated claims for breach of contract and unfair or deceptive trade practices. The amended complaint also requests injunctive relief as an appropriate remedy. (*See* Am. Compl. ¶ 41.) LendingTree has not moved for injunctive relief, and it correctly contends that any ruling on such a request would be premature. (Pl.'s Mem. 13.)

38. Accordingly, for purposes of clarity, the Court grants the motion to the extent it seeks dismissal of the purported cause of action for preliminary injunction. The Court renders this decision without prejudice to LendingTree's ability to pursue whatever remedies it may be entitled to by law or equity pursuant to its prayer for relief, which the Court construes to include a request for preliminary injunctive relief. The Court will assess a motion for preliminary injunction, if filed, on its own merits and not as part of this Order.

## III.
## CONCLUSION

39. The Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss as follows:

   a. The Court denies the motion as to the claim for unfair or deceptive trade practices against Intercontinental.

   b. The Court grants the motion as to the claim for tortious interference against Wilson and Brooks. This claim is dismissed with prejudice.

c. The Court grants the motion as to the claim for civil conspiracy against all Defendants. This claim is dismissed with prejudice.

d. The Court grants the motion as to the purported claim for preliminary injunction against all Defendants. The Court's ruling is without prejudice to LendingTree's ability to file a motion for preliminary injunction.

This the 23rd day of June, 2017

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases