STATE OF NORTH CAROLINA v. T. J. SANDERS

No. 8822SC1170

(Filed 15 August 1989)

1. **Criminal Law § 7— entrapment—denial of essential element dealing with intent—right to assert defense**

    Although in general North Carolina follows the majority rule which precludes the assertion of the defense of entrapment when the defendant denies one of the essential elements of the offense charged, a defendant who denies an essential element which deals with intent but who admits committing the acts underlying the offense with which he is charged may employ an entrapment defense.

2. **Criminal Law § 7— sale of cocaine charged—defendant's belief that powder was baking soda—defense of entrapment available to defendant**

    Defendant could properly raise the defense of entrapment since a defendant must have knowledge that the substance in question is a controlled substance in order to be convicted of

STATE v. SANDERS

[95 N.C. App. 56 (1989)]

possession with intent to sell or deliver a controlled substance, maintaining a dwelling house to keep or sell a controlled substance, or sale of a controlled substance; defendant in this case testified that he thought the substance he sold to an undercover agent was baking soda; he thus denied the essential element of knowledge that the substance he was selling was cocaine; and the denial of an essential element dealing with intent does not prevent a defendant from raising the defense of entrapment.

3. **Criminal Law § 163— failure to instruct on entrapment—no plain error**

Though the trial court erred in failing to include an entrapment instruction with its instructions to the jury for six of the charges for which defendant was tried, this failure to instruct did not entitle defendant to a new trial because it did not constitute plain error in that it probably had no impact on defendant's conviction.

APPEAL by defendant from *DeRamus, J. D., Jr., Judge*. Judgment entered 28 July 1988 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 11 May 1989.

Defendant appeals his convictions of trafficking in cocaine, conspiracy to traffic in cocaine, two counts of possession with intent to sell or deliver cocaine, two counts of maintaining a dwelling house to keep or sell a controlled substance, and two counts of selling cocaine. Defendant received concurrent sentences of fifteen years and two $50,000 fines for the trafficking in cocaine and conspiracy to traffic in cocaine convictions; concurrent ten year sentences for each of the selling of cocaine and possession with intent to sell or deliver cocaine convictions, to be served at the expiration of the two fifteen year sentences; and concurrent five year sentences for the convictions of maintaining a dwelling house to keep or sell a controlled substance, to be served at the expiration of all other sentences.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Robert G. Webb, for the State.*

*Michael D. Lea for defendant-appellant.*

JOHNSON, Judge.

The State presented evidence at trial which tended to show the following: On 27 October 1987, undercover SBI agent Walter House went to an apartment located at 321 Tremont Street in Thomasville, North Carolina. Agent House was accompanied by a confidential police informant who had identified himself to Agent House as Clad McNair. After Agent House and McNair entered the apartment, McNair introduced Agent House to defendant. Agent House negotiated with defendant to purchase one-eighth of an ounce of cocaine. Agent House then purchased from defendant one-eighth of an ounce of white powder, which was later found to be cocaine, for $300. On 28 October 1987 Agent House, again accompanied by McNair, returned to the apartment on Tremont Street and purchased for $850 one-half of an ounce of a white powder which was also later found to be cocaine.

On 2 November 1987 Agent House parked his car in front of the apartment on Tremont Street. Defendant walked up to Agent House's car and asked Agent House if he wanted to buy cocaine. Agent House told defendant that he wanted to buy one and one-half or two ounces of cocaine. Defendant said that he needed to use a telephone to check with his source, and since defendant indicated that there was no telephone in his apartment he got into Agent House's car so Agent House could drive him to a pay phone. Agent House drove defendant and McNair to the parking lot of a restaurant, and defendant left the car and walked across the street to use a pay phone in a convenience store. Defendant returned to Agent House's car approximately 15 minutes later and told Agent House that one and one-half ounces of cocaine would be delivered to the convenience store parking lot in approximately 10 minutes. Defendant and Agent House then agreed upon a price of $2,500 for the cocaine. Agent House parked his car in a car wash stall located in the convenience store parking lot, and a white car driven by a woman arrived in an adjacent stall approximately eight minutes later. Defendant and McNair left Agent House's car, and the driver of the white car then walked up to Agent House's car and got into the passenger side of the car. Agent House then purchased from the driver of the white car one and one-half ounces of a white powder which was later proved to be cocaine for $2,500. Defendant and McNair were not in sight of Agent House's car when this sale took place. Defendant and the driver of the white car were seated in the white car when Agent House drove away.

Defendant claimed at trial that the following events occurred in connection with the sales described above. He testified that McNair had met him in a liquor house on the afternoon of 27 October 1987 and asked him if he wanted to become involved in a scheme to sell a substance which they would represent to be cocaine but which would actually be baking soda. According to defendant, McNair said that he wanted to sell this substance to one of his acquaintances who was going to inherit a great deal of money. Defendant agreed to use his apartment to sell the counterfeit cocaine to McNair's acquaintance. McNair brought a powdery white substance to defendant's apartment later that day. Defendant testified that he sold the substance, which be believed to be baking soda, to Agent House later that night. McNair brought defendant a second batch of white powder on 28 March 1987. Defendant sold this second batch, which he believed to be baking soda, to Agent House later that night.

Defendant testified that he did not sell anything to Agent House on 2 November 1987. Defendant testified that he and Agent House had discussed a sale of one and one-half ounces of cocaine on the night of 2 November, and defendant testified that he had also done some of the other things which the State alleged that he had done that night, but defendant denied selling any white powder to Agent House that night.

Travis Drayton testified that he had participated in alleged discussions between defendant and McNair in which McNair suggested that the three men carry out a scheme to sell a substance which would be represented to be cocaine but which would actually be baking soda. Drayton indicated that the first of these discussions took place 27 October 1987. Drayton testified that McNair intended for defendant to sell the counterfeit cocaine on 27 October 1987, 28 October 1987, and a third date sometime after 28 October 1987. McNair did not testify at trial.

Defendant requested during the jury instruction conference that the defense of entrapment be submitted to the jury. The trial court denied defendant's request.

Defendant's first contention on appeal is that the trial court erred in denying defendant's request to submit the defense of entrapment to the jury. We agree that the trial court erred in refusing to submit the defense of entrapment to the jury for six of the eight charges for which defendant was being tried. Defendant's

counsel did not object at trial to the court's jury instructions, however, and since the court's failure to instruct on entrapment was not plain error we find that the court's error in instructing the jury does not entitle defendant to a new trial.

"A defendant is entitled to a jury instruction on entrapment whenever the defense is supported by defendant's evidence, viewed in the light most favorable to the defendant." *State v. Jamerson,* 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983). In order for a defendant to receive an entrapment instruction, the evidence which supports the entrapment defense must be credible. *State v. Burnette,* 242 N.C. 164, 87 S.E.2d 191 (1955).

A defendant must present evidence that he was induced by a government agent into committing a crime which was conceived by the government agent in order to receive an entrapment instruction, and the evidence, viewed in the light most favorable to defendant, indicates that defendant was so induced to commit such a crime. There are two elements to the defense of entrapment:

> (1) acts of persuasion, trickery, or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, (2) when the criminal design originated in the minds of the government officials, rather than the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities.

*State v. Walker,* 295 N.C. 510, 513, 246 S.E.2d 748, 750 (1978) (citations omitted).

Police informant McNair clearly was an agent of law enforcement officers, since Agent House testified that McNair was working under the direction of law enforcement officers and was being paid for expenses he incurred in his work as an informant. Defendant gave uncontradicted testimony that McNair persuaded him to participate in a scheme to sell a substance which they would represent to be cocaine, and since defendant and Drayton both testified that McNair initiated the discussion of this scheme there was also evidence that the criminal design originated in the mind of McNair rather than in defendant's mind. Drayton also testified that McNair had said that defendant should sell the counterfeit cocaine on 27 October, 28 October, and one occasion after 28 October, so there was evidence that McNair induced defendant to take part in all of the sales for which defendant was convicted.

[1] A defendant also must admit to having committed the acts underlying the offense with which he is charged in order to receive an entrapment instruction. Our Supreme Court has held that when a defendant "denies the commission of the acts underlying the offense charged, he cannot raise the inconsistent defense of entrapment." *State v. Neville*, 302 N.C. 623, 626, 276 S.E.2d 373, 375 (1981). The Court has also stated, however, that an entrapment defense may be employed by a defendant who denies having the *intent* required for the commission of a crime. *State v. Luster*, 306 N.C. 566, 581, 295 S.E.2d 421, 429 (1982). A defendant can deny intent and still claim entrapment because "the defense of entrapment itself is an assertion that it was the will of the government, and not of the defendant, which spawned the commission of the offense." *Neville* at 626, 276 S.E.2d at 375. Therefore, although in general "North Carolina follows the majority rule which precludes the assertion of the defense of entrapment when the defendant denies one of the essential elements of the offense charged," *id.* at 625, 276 S.E.2d at 374, a defendant who denies an essential element which deals with intent but who admits committing the acts underlying the offense with which he is charged may employ an entrapment defense.

Defendant admitted committing the acts underlying six of the eight charges for which he was convicted. Defendant was charged, on the basis of his actions on 27 October 1987 and 28 October 1987, with two counts of possession with intent to sell or deliver cocaine, two counts of maintaining a dwelling house to keep or sell a controlled substance, and two counts of selling cocaine. Defendant admitted selling a substance which was later found to be cocaine to Agent House on 27 October 1987 and 28 October 1987. Defendant also admitted that he made these sales in the apartment where he lived. Defendant therefore admitted committing the acts underlying all six offenses which he was charged with committing on 27 October and 28 October 1987.

[2] A defendant must have knowledge that the substance in question is a controlled substance in order to be convicted of the following: possession with intent to sell or deliver a controlled substance, *State v. Boone*, 310 N.C. 284, 311 S.E.2d 552 (1984); maintaining a dwelling house to keep or sell a controlled substance, G.S. sec. 90-108(a)(7); or sale of a controlled substance, *State v. Stacy*, 19 N.C. App. 35, 197 S.E.2d 881 (1973). Defendant testified that he thought that the substance he sold to Agent House was baking

soda, however, so defendant denied the essential element of knowledge that the substance which he was selling was cocaine. By denying this essential element defendant did not deny selling cocaine; he merely denied having the *intent* to sell cocaine. Since the denial of an essential element dealing with intent does not prevent a defendant from raising the defense of entrapment, defendant's claim that he thought he was selling baking soda did not preclude him from raising an entrapment defense.

Since the evidence when viewed in the light most favorable to defendant indicates that defendant admitted committing the acts underlying six of the offenses for which he was convicted, and since this evidence also indicates that defendant was induced by a government agent into committing these offenses, defendant was entitled to a jury instruction on entrapment for these offenses. We therefore find that the trial court erred in refusing to include an entrapment instruction when it instructed the jury on the two counts of possession with intent to sell or deliver cocaine, two counts of maintaining a dwelling house to keep or sell a controlled substance, and two counts of selling cocaine.

The charges of trafficking in cocaine and conspiracy to traffic in cocaine were based on defendant's alleged actions on 2 November 1987, and defendant admitted undertaking some potentially incriminating actions on that day. Defendant testified that on the night of 2 November he told Agent House that they would have to go to Jamestown so that defendant could obtain one and one-half ounces of cocaine which defendant would sell to Agent House for $2,500. Defendant also testified that he went to a convenience store later that night after telling Agent House that he would use the telephone at the store to set up the cocaine sale. Defendant also admitted getting in the car driven by the woman who made the sale after the sale took place, and he admitting receiving $300 of the money which Agent House paid for the cocaine which he bought that night.

Despite these admissions, however, defendant also specifically and explicitly denied at trial any involvement in the cocaine sale which took place on the night of 2 November 1987. Defendant testified that "I ain't sold him nothing that third time [November 2]. He got that from somebody else." Defendant also characterized the 2 November sale at trial by stating that "Clarence [McNair] and the girl transported that deal. I didn't have anything to do

STATE v. SANDERS

[95 N.C. App. 56 (1989)]

with that." These denials of involvement are in conflict with defendant's admissions about his actions on 2 November. It is clear, however, that when a defendant gives conflicting testimony in which he admits taking actions which could implicate him in a crime but denies actually committing that crime, he cannot be considered to have admitted committing the acts underlying the crime. Defendant's explicit denials of any involvement in the 2 November cocaine sale indicate that he did not admit committing the acts underlying the charges which were based on his alleged role in that sale. The trial court therefore did not err in refusing to instruct the jury on entrapment when it issued jury instructions on the charges of trafficking in cocaine and conspiracy to traffic in cocaine.

[3] The trial court erred in failing to include an entrapment instruction with its instructions to the jury for six of the charges for which defendant was tried, but this failure to instruct does not entitle defendant to a new trial unless it constitutes plain error. Defendant's counsel claims in an affidavit submitted on appeal that he objected to the trial court's jury instructions after the jury instruction conference was held. A careful analysis of the record on appeal, however, reveals that defendant's counsel did not object at any time to the trial court's jury instructions. A party who does not object at trial to the trial court's instructions cannot assign as error the trial court's failure to issue a proper instruction unless this failure constitutes "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). A defect in the court's jury instruction constitutes plain error if it "probably had an impact on the defendant's conviction." *State v. Wrenn*, 316 N.C. 141, 152, 340 S.E.2d 443, 450 (1986).

We do not believe that the trial court's failure to instruct the jury on entrapment probably had an impact on defendant's conviction. In order to find defendant guilty the jury had to find that defendant knew he was selling cocaine, so the jury must have disbelieved defendant's claim that he thought he was selling baking soda. Since the jury clearly did not believe defendant's claim that he thought he was selling baking soda, we find no reason to think that the jury probably believed defendant's related claim that he was induced by a government agent to sell a white, powdery substance. We do not believe, therefore, that defendant probably would have been acquitted of the six applicable charges if the trial court had instructed the jury on entrapment. We therefore hold that the trial court's failure to issue an entrapment instruction

for these charges does not constitute plain error and does not entitle defendant to a new trial.

Defendant also assigns as error the trial court's sustaining of the State's objection to defendant's questions at trial concerning the purity of normal cocaine. Defendant has not cited any authority in support of this assignment of error, and we therefore find that this assignment of error is abandoned. N.C. Rules of App. P., Rule 28(b)(5); *Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987).

Affirmed.

Judges COZORT and GREENE concur.