An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-416

NORTH CAROLINA COURT OF APPEALS

Filed:  21 October 2014


STATE OF NORTH CAROLINA


   v.                           Mecklenburg County
                                      Nos. 12 CRS 54391, 54395

TORRENCE WESLEY PEOPLES



Appeal by Defendant from judgment entered 5 December 2013 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 September 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*
>
> *Richard Croutharmel for Defendant.*


BELL, Judge.


Defendant appeals from a judgment sentencing him to 103 to 136 months imprisonment for selling marijuana and obtaining habitual felon status.  On appeal, Defendant contends that he was provided constitutionally ineffective assistance of counsel

when his trial counsel admitted his guilt before the jury in his opening statement without his consent after he had withdrawn his defense of entrapment. Defendant further alleges that his trial counsel's performance was deficient and prejudiced the outcome of his trial under traditional ineffective assistance of counsel standards. After careful consideration of the parties' arguments in light of the record and the applicable law, we conclude that Defendant is not entitled to relief under either theory.

## I. Factual Background

### A. Substantive Facts

On 20 September 2012, the Charlotte Mecklenburg Police Department sanctioned a buy/bust operation in which police officers would attempt to purchase drugs from street-level drug dealers. On this particular night, officers selected a location in Northwest Charlotte because of the high rate of violent crimes, prostitution, and drug-related crimes which occurred there. Officer Alex Saine arrived on the scene in an undercover vehicle at around 9:25 p.m. Upon arriving, Officer Saine observed Defendant standing with a group of three or four males in a parking lot. Officer Saine made eye contact with Defendant and gave Defendant a nod. Defendant approached the driver's side of Officer Saine's vehicle after first returning the nod.

Defendant asked Officer Saine what the officer desired from him and Officer Saine told Defendant that he wanted some "green," which is a common term for marijuana. Officer Saine did not recall Defendant inquiring whether or not he was a police officer but Officer Saine testified that had Defendant made such an inquiry, he would have told Defendant that he was not an officer. After Officer Saine stated that he wanted $20 worth of "green," Defendant stated that he did not have anything on him and had Officer Saine drive him to his house. Upon arriving, Officer Saine gave Defendant a marked $20 bill. Defendant then went inside his home and returned with four bags of marijuana, which he gave to Officer Saine. Defendant was arrested after being driven back to the parking lot at which contact was initially made.

When Defendant was arrested, he confirmed his address to arresting officers and agreed to let them search his residence. Officers found more bags of marijuana and a digital scale in a location in Defendant's room exactly where he informed them that these items would be.

## B. Procedural History

Defendant was indicted on 10 December 2012 for engaging in the sale of a controlled substance, delivery of a controlled substance, possession of a controlled substance with the intent

to sell or deliver, possession of drug paraphernalia, and obtaining habitual felon status. The charges against Defendant came on for trial during the 4 December 2013 Criminal Session of the Mecklenburg County Superior Court. The jury returned guilty verdicts against Defendant on the charges of selling a controlled substance, delivery of a controlled substance, and having obtained habitual felon status. Judgment against Defendant for delivering a controlled substance was arrested at sentencing. The trial court entered judgment against Defendant on 5 December 2013 for the sale of a controlled substance and obtaining habitual felon status, sentencing him to a term of 103 to 136 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

Defendant raises two separate ineffective assistance of counsel arguments on appeal. First, Defendant contends that he received *per se* ineffective assistance of counsel on the basis that his trial attorney admitted during his opening statement that Defendant delivered marijuana to the undercover officer. According to Defendant, although he initially gave his counsel explicit consent on the record before the trial judge to admit his guilt, such consent was "necessarily withdrawn" when he finally understood that an entrapment defense would be

unavailable. The entirety of Defendant's argument rests on the theory that the declaration by his trial attorney that Defendant understood the futility of the defense evidenced a clear intent to abandon any entrapment-based defense, which constituted an implicit withdrawal of his consent previously given to his attorney to admit the criminal acts before the jury in opening statements.

Defendant also contends that, should this Court not find ineffective assistance of counsel *per se* based upon his counsel's admission of his guilt during his opening statement, this Court should still conclude that Defendant received ineffective assistance of counsel because there was no justifiable reason for his admission of his client's guilt during his opening statement in light of the fact that defense counsel neither elicited nor presented any evidence tending to suggest that Defendant was entrapped and made no similar argument during closing arguments. In essence, Defendant argues that his counsel acted in a constitutionally deficient manner when he admitted Defendant's guilt without pursing the entrapment defense and this action prejudiced his case at trial. We, however, do not agree with Defendant's contentions.

## A. *Harbison* Violation

### 1. Facts Surrounding Defendant's Consent

Prior to trial, Defendant was offered a plea agreement but rejected the agreement in favor of going to trial. Defense counsel informed the court that Defendant wished to assert an entrapment defense stemming from the fact that Defendant had asked Officer Saine if he was a law enforcement officer on three occasions prior to making the drug deal and Officer Saine responded untruthfully. In doing so, Defendant consented to having his counsel admit during his opening statement that Defendant committed the crimes charged. Defense counsel informed the court that he had attempted to explain to Defendant that an entrapment defense would not be available under those facts and that he did not file a notice to the State that the defense would be pursuing entrapment as an affirmative defense for that reason.

Defendant then stated upon inquiry by the trial court that he would allow his attorney to admit that he had sold drugs to a law enforcement officer because Officer Saine had denied that he was a law enforcement officer when Defendant questioned him. Defendant claimed that his knowledge came from reading "the law book." However, the trial court informed Defendant that a lie told by Officer Saine would not constitute a legal defense to the crimes charged and it would not instruct the jury on an

entrapment defense based on the facts alleged. After a bench conference, counsel for Defendant stated:

> Your Honor, we are at an impasse. [Defendant] now realize[s] that the defense is not a viable defense but at the same time doesn't want to plea as charged. He wants to take the plea and I said, "No, the old plea is not available."

The trial court made no further inquiry into the matter and, instead, brought in the jury. During his opening statement, defense counsel stated the following:

> Well, this is a very weird case where the defense counsel really agree with the prosecutor's narration of the facts, but in this case we don't agree too much on what happened. The greatest agreement we have with the prosecutor's case is that my client, when the officer approached him, he asked the officer several times are you [a] police officer. The officer said no, so my client felt he was misled when he provided the marijuana in question.

During the course of trial, the State elicited testimony regarding the training that law enforcement officers receive about telling suspects during undercover work that they are not law enforcement officers. Defense counsel failed to question Officer Saine with respect to whether or not he ever lied to Defendant regarding his employment with the Charlotte Mecklenburg County Police Department.

### 2. *Harbison* Analysis

Generally, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286, *cert. denied*, 549 U.S. 867, 127 S. Ct. 164, 166 L. Ed. 2d 116 (2006). However, our Supreme Court has concluded "that ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 106 S. Ct. 1992, 90 L. Ed. 2d 672 (1986). Cases such as *Harbison* "clearly indicate that the trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decision." *State v. Maready*, 205 N.C. App. 1, 7, 695 S.E.2d 771, 776, *disc. review denied*, 364 N.C. 329, 701 S.E.2d 247 (2010). Therefore, "[i]n order to ensure that a defendant has consented to his counsel's concessions of guilt, a trial court must make an inquiry 'adequate to establish that defendant consented to the admissions made later by counsel

during trial.'" *State v. Johnson*, 161 N.C. App. 68, 76, 587 S.E.2d 445, 451 (2003) (quoting *State v. Berry*, 356 N.C. 490, 514, 573 S.E.2d 132, 148 (2002)).

There is no allegation made in this case, nor is there evidence in the record, to show that the trial court did not engage in an adequate inquiry with Defendant regarding the extent to which he consented to allow his trial counsel to admit his guilt during opening statements. The record indicates that Defendant understood his counsel's statements would constitute an admission of his guilt with respect to the crimes with which he was charged and clearly indicated that the statements were to be made by his trial counsel with his permission. Despite Defendant's clear, unambiguous consent, Defendant argues that vague statements by his attorney on the record concerning Defendant's understanding of the futility of asserting an entrapment defense were sufficient to constitute a withdrawal of his consent. We disagree.

A careful reading of the record does not demonstrate any withdrawal of consent by Defendant. Even on appeal, Defendant does not argue that he told his trial counsel to refrain from making an admission of guilt. The key to a *Harbison* issue is whether guilt was admitted to the "jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 508.

Defendant clearly consented to his counsel admitting his guilt. Defendant never subsequently explicitly withdrew his consent. To counter these facts, Defendant requests that this Court extend the rule expressed in *Harbison* to situations in which a Defendant has implicitly withdrawn his consent. However, our Supreme Court, in *State v. Berry*, held that absent notice that a defendant's consent to the making of certain admissions is contingent upon presenting a particular defense and a subsequent withdrawal of that defense, a trial court does not act improperly in assuming that the prior consent is still valid.

The defendant in *Berry* was indicted for first degree murder and subsequently filed a notice of his intent to pursue a defense of insanity. 356 N.C. at 494, 497, 573 S.E.2d at 137, 139. The defendant argued that the trial court erred when it failed to determine that the defendant had withdrawn his consent to allowing his attorneys to make certain concessions after abandoning his insanity defense. *Id.* at 511, 573 S.E.2d at 147. The defendant in that case informed the trial court that he was aware of the trial strategy and had consented to the strategy. *Id.* at 512-13, 573 S.E.2d at 147. After an opening statement in which defense counsel made certain concessions to the jury and after evidence had been presented by the State, the defense became aware of exculpatory evidence. *Id.* at 513, 573 S.E.2d at

147. In seeking a mistrial, the defendant's attorneys argued that they were not sure that they would have pursued an insanity defense had they known of the exculpatory evidence. *Id.* Still, after the motion for a mistrial was denied, counsel argued during closing argument that the State had proven a case of attempted first degree murder. *Id.* at 514, 573 S.E.2d at 148. The Court found the defendant's consent to have remained valid on the basis that the defendant "did not expressly or impliedly condition his consent to acknowledge aspects of guilt upon presentation of an insanity defense" and "never formally withdrew his insanity plea," thereby failing to give "the trial court notice of the change of strategy." *Id.* at 514-15, 573 S.E.2d at 148.

As was the case with the defendant in *Berry*, Defendant gave no indication to the trial court that his consent was contingent upon the pursuit of an entrapment defense. Defendant argues that the contingency of his consent to his making such an admission was implicit in light of the fact that admitting any guilt on his part served no functional purpose apart from a trial strategy of pursuing an entrapment defense. However, this argument was rejected in *Berry*, in which the Court found no implied contingency in the defendant's consent. Had Defendant stated that his consent to admitting his guilt was contingent

upon an entrapment defense being pursued, this Court might have been persuaded that an abandonment of his entrapment defense amounted to a withdrawal of his consent.

Even if this Court were to find that Defendant's consent to admit his criminality was dependent upon a pursuit of his entrapment defense, we find, as the Court did in *Berry*, that Defendant failed to formally notify the court of his decision to adopt a new defense strategy sufficiently to put the trial court on notice that he was no longer pursuing an entrapment defense. The statement relied upon by Defendant as evidencing the withdrawal of his entrapment defense was his trial counsel's comment that Defendant had come to a realization that an entrapment defense was not viable. However, that statement falls short of being a clear statement to the trial court that Defendant was abandoning his prior defense strategy. Defendant, on multiple occasions was told by the trial court that entrapment was not a viable defense and that it would not instruct the jury concerning entrapment based on the facts as alleged. Defendant still sought to pursue the defense. Beyond Defendant's apparent stubbornness with respect to pursing a futile defense, had the evidence during trial varied in substance from that initially forecast by Defendant, an entrapment defense could have been warranted. The lack of

clarity in Defendant's purported withdrawal was made apparent by the direct examination of Officer Saine. The prosecutor specifically asked Officer Saine questions regarding whether or not he had lied to Defendant about the fact that he was a law enforcement officer, the strategy behind the telling of such lies and the propriety of his statement. We are unable, like the State below, to determine that Defendant had clearly withdrawn his entrapment defense.

Defendant would have this Court conclude from a vague statement by his counsel that he had withdrawn his entrapment defense and infer from that conclusion that he had withdrawn his consent to a concession of guilt. This we cannot do. Had Defendant clearly made his consent to a concession of guilt contingent upon presenting his entrapment defense and then clearly withdrawn the defense, we might have been persuaded to hold in Defendant's favor.

We do take the time to note that the better practice for trial courts facing ambiguous statements regarding departure from or abandonment of a particular defense strategy is to question the defendant on the record in order to ascertain, clearly, whether or not a particular defense strategy has been abandoned and whether or not the consent to an admission of guilt previously given has been withdrawn. It is for cases such

as this that our Courts have always "urged 'both the bar and the trial bench to be diligent in making a full record of a defendant's consent when a *Harbison* issue arises at trial.'" *Id.* at 514, 573 S.E.2d at 148.

## B. *Strickland* Analysis

Defendant finally argues, under the *Strickland* standard of ineffective assistance of counsel, that even if he did not receive *per se* ineffective assistance of counsel, his conviction should be overturned because there was no possible trial strategy that could have warranted his trial counsel's decision to admit his guilt before the jury while failing to present any evidence that would tend to show that Defendant was entrapped. We disagree.

In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), the Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

With respect to pursuing a trial strategy based upon entrapment, this Court has held that "[a] defendant . . . must admit to having committed the acts underlying the offense with which he is charged in order to receive an entrapment instruction." *State v. Sanders*, 95 N.C. App. 56, 61, 381 S.E.2d 827, 830 (1989). Therefore, it stands to reason that if Defendant was pursuing an entrapment-based defense, his trial counsel would make a concession of guilt before the jury. Defendant contends that this concession by his trial counsel without further pursuit of the defense, either through cross-examination of the State's witnesses or presentation of evidence, is constitutionally deficient performance and therefore meets the first prong of the *Strickland* test.

However, this Court need not reach the issue of whether trial counsel's performance was constitutionally deficient. *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985) (holding that the reviewing "court need not determine whether counsel's performance was actually deficient" if it "can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different"). In order for Defendant to be entitled to a new trial, Defendant must also meet the second prong under *Strickland*, "that counsel's

deficient performance prejudiced his defense." *Allen*, 360 N.C. at 316, 626 S.E.2d at 286. Defendant is not entitled to any appellate relief unless this Court concludes that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d 698. This, we cannot do.

Despite Defendant's contention, we do not find the fact that the jury returned guilty verdicts against Defendant only on the charges that were conceded during opening statements persuasive to show that these consessions prejudiced Defendant. Officer Saine testified that Defendant approached him in a parking lot to inquire what he wanted, that Officer Saine requested marijuana, that Defendant offered to drive Officer Saine to his residence in order to satisfy his request for marijuana, that Officer Saine took Defendant to his residence and gave Defendant a marked $20 bill, that Defendant entered his residence while Officer Saine waited outside, that Defendant returned to Officer Saine's vehicle with four bags of marijuana and handed them to Officer Saine, that the money exchanged had been verified through matching serial numbers, and that multiple other bags of marijuana were found in Defendant's home in a location described by Defendant when he consented to law

enforcement officers conducting a search of his residence. Defendant presented no testimony to the contrary and cross-examination established no inconsistencies in the witnesses' testimony. In light of this evidence, we are unable to conclude that there is any reasonable probability that the outcome at Defendant's trial would have been any more favorable to Defendant than was actually the case had Defendant's trial counsel refrained from making the challenged comments. Therefore, Defendant is not entitled to a new trial.

## III. Conclusion

For the reasons set forth above, we conclude that any admission made by Defendant's trial counsel did not result in *per se* ineffective assistance of counsel. Furthermore, we conclude that, in light of the weight of the evidence against him, Defendant was not prejudiced by his trial counsel's performance. Therefore, the trial court's judgment should, and hereby does, remain undisturbed.

NO ERROR.

Judges ERVIN and MCCULLOUGH concur.

Report per Rule 30(e).